UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLHA VELYKHOLOVA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>BBS BEAUTY GLOBAL INC.; ROBERT DANIELS SALON, INC.; BBS ENTERPRISES, INC. d/b/a BRIGHTON BEAUTY SUPPLY; BBS BEAUTY INDUSTRIES, INC.; BBS BEAUTY SYSTEMS, INC.; CASA DI CAPELLI SALON INC.; BRIGHTON BEAUTY SUPPLY; DIMITRY BEDEROFF a/k/a DIMITRY BEDEROV a/k/a DIMITRY BEDEROFT; JOHN DOE CORPORATIONS 1-10; and JOHN/JANE DOES 1-10,<br><br>Defendants. | Case No.:<br><br>**COLLECTIVE, CLASS, AND INDIVIDUAL ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Olha Velykholova, individually and on behalf of all others similarly situated, by her attorneys, alleges as follows:

## 1. NATURE OF THE ACTION

1. This is a collective, class, and individual action to recover unpaid minimum wages, overtime wages, spread-of-hours pay, unlawfully withheld wages, unlawful deductions/kickbacks, statutory wage notice and wage statement damages, paid sick and protected time damages, retaliation damages, pregnancy discrimination damages, citizenship/immigration-status discrimination and retaliation damages, defamation damages, restitution of coerced payments, liquidated damages, punitive damages where available, interest, attorneys' fees, and costs.

## 2. JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because Plaintiff asserts claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's New York Labor Law, New York State Human Rights Law, New York City Human Rights Law, New York paid sick leave, defamation, conversion, unjust enrichment, money had and received, duress, coercion, and related state and city claims because those claims arise from the same employment relationship, pay practices, retaliation, termination, and March 20, 2026 events.

4. Venue is proper in this District under 28 U.S.C. § 1391 because Defendants reside and/or do business in this District, Plaintiff worked in this District, and the events giving rise to these claims occurred in this District.

5. Plaintiff reserves the right to seek leave to amend upon exhaustion of administrative remedies.

**3. <u>PARTIES</u>**

6. Defendant BBS Beauty Global Inc. is a New York corporation that operated and/or controlled part of Defendants' integrated beauty supply, salon, retail, marketing, and related business enterprise.

7. Defendant Robert Daniels Salon, Inc. is a New York corporation located at or associated with 417 Brighton Beach Avenue, Brooklyn, New York, and operated and/or controlled the salon location where Plaintiff worked.

8. Defendant BBS Enterprises, Inc. d/b/a Brighton Beauty Supply operated and/or controlled the beauty supply business at or around 419 Brighton Beach Avenue, Brooklyn, New York.

9. Defendant BBS Beauty Industries, Inc. is a related entity associated with Defendants' beauty, salon, retail, wholesale, and/or product business operations.

10. Defendant BBS Beauty Systems, Inc. is a related entity associated with the same enterprise, addresses, ownership, control, and/or business operations.

11. Defendant Casa Di Capelli Salon Inc. is a related entity associated with the 419 Brighton Beach Avenue location and/or the same enterprise, ownership, management, and business operations.

12. Defendant Casa Di Capelli Salon Inc. is a related entity associated with the 419 Brighton Beach Avenue location and Dimitry Bederoff/Bederov.

13. Defendant Brighton Beauty Supply is sued as a trade name, assumed name, d/b/a, and/or legal form presently unknown.

14. Defendant DIMITRY BEDEROFF a/k/a DIMITRY BEDEROV a/k/a DIMITRY BEDEROFT was Plaintiff's hirer, supervisor, manager, wage payer, and the person who controlled Plaintiff's schedule, pay, discipline, and termination.

15. The John Doe Corporate Defendants and John/Jane Doe Individual Defendants are presently unidentified entities and individuals who owned, operated, controlled, managed, staffed, paid wages for, kept payroll records for, or otherwise acted as employers of Plaintiff and similarly situated employees.

16. At all relevant times, Defendants were Plaintiff's "employers" under the FLSA and NYLL because they possessed and exercised operational control over Plaintiff's work, pay, schedule, records, discipline, and employment conditions.

17. At all relevant times, Defendants operated as a single integrated enterprise and/or joint employers through common ownership, common management, centralized control of labor relations, shared employees, shared payroll practices, shared locations, shared business purpose, and interrelated operations.

## 4. <u>FLSA COVERAGE</u>

18. Defendants were engaged in interstate commerce and/or the production of goods or services for commerce.

19. Plaintiff's work included digital marketing, e-commerce, website, customer-service, phone, register, scheduling, administrative, and front-desk duties that used interstate instrumentalities, including the internet, telephones, payment systems, and goods moving in interstate commerce.

20. Defendants' business sold beauty products, supplies, and services using goods, materials, products, payment systems, and communication systems that moved in or affected interstate commerce.

21. On information and belief, Defendants' integrated enterprise had annual gross sales of at least $500,000 during the relevant FLSA period.

22. Alternatively, Plaintiff and similarly situated employees were individually covered by the FLSA because their work regularly involved interstate communications, electronic commerce, payment systems, and products moving in commerce.

## 5. FACTUAL ALLEGATIONS

23. Plaintiff began working for Defendants on or about October 6, 2017.

24. Plaintiff worked at Defendants' Brooklyn worksites, including 417 Brighton Beach Avenue and 419 Brighton Beach Avenue.

25. Plaintiff's title included Marketing Director, and Defendants paid her hourly and required her to perform non-exempt work.

26. Plaintiff's duties included marketing, digital design strategy, e-commerce work, customer-facing front-desk work, answering phones, performing administrative tasks, operating the register, and booking schedules.

27. Plaintiff was not paid sufficiently for any exemption and was not treated as an exempt employee in practice.

28. Plaintiff was hired by, supervised by, managed by, and paid by Defendant Dimitry Bederoff/Bederov.

29. From at least the statutory period forward, Plaintiff regularly worked long shifts and, during many periods, worked approximately six days per week.

30. Beginning in or around June 2020, after Defendants reopened following the COVID-related closure, Plaintiff generally worked approximately six days per week from about 9:00 a.m. to 8:00 p.m., except Sundays when she worked until about 6:00 p.m., with one day off for school, for approximately 75 hours per week.

31. During this period, Plaintiff was paid by check for only about 25 hours per week and received additional off-the-books cash, resulting in total weekly pay of approximately $400 despite approximately 75 hours worked.

32. From approximately December 2020, Plaintiff worked approximately four days per week, typically from about 9:00 a.m. to 8:00 p.m., except Sundays until about 6:00 p.m., and continued to be paid for only about 25 recorded hours, plus irregular cash.

33. Plaintiff's hourly rates increased over time, including approximately $12.50 per hour in 2021, $13.50 per hour in 2022, $15.00 per hour in 2023, $16.00 per hour in 2024, and $16.50 per hour in 2026 but was only paid for about 25 recorded hours, plus irregular cash.

34. Beginning in or around September 2024 and continuing through the end of her employment, Plaintiff generally worked three days per week from approximately 9:00 a.m. to 6:00 p.m. and one day per week from approximately 9:00 a.m. to 8:00 p.m.

35. Defendants recorded only a fraction of Plaintiff's hours and failed to pay for all hours worked.

36. Defendants paid for only about 25 hours for Plaintiff during weeks when she worked substantially more.

37. For example, Plaintiff was paid by BBS Beauty Global Inc. for 25 hours at $16.00 per hour in 2024, despite Plaintiff working more hours.

38. For example, Plaintiff was paid by Robert Daniels Salon Inc. for 25 hours at $15.00 per hour in January 2021.

39. During the last approximately four months of Plaintiff's employment, Defendants altered Plaintiff's time records approximately twice per week by changing her recorded clock-out time from about 7:00 p.m. to about 5:00 p.m., deleting approximately two hours per day.

40. This practice resulted in approximately six to seven unpaid hours per week during the final months of Plaintiff's employment.

41. Defendants sometimes failed to pay Plaintiff for an entire day of work.

42. Defendants paid Plaintiff partly by check/direct deposit and partly in cash, and failed to include all compensation in the regular rate for overtime purposes.

43. Defendants failed to pay Plaintiff one-and-one-half times her regular rate for all hours worked over forty in a workweek.

44. Defendants failed to pay Plaintiff at least the applicable New York minimum wage for all hours worked during weeks when her total compensation divided by total hours worked fell below the applicable minimum wage.

45. Defendants failed to pay Plaintiff spread-of-hours pay for days when her workday exceeded ten hours.

46. Defendants failed to provide accurate wage notices at hiring and annually or as otherwise required.

47. Defendants failed to provide accurate wage statements showing Plaintiff's true hours worked, rates of pay, overtime rates, gross wages, deductions, allowances, and employer identity.

48. Defendants unlawfully deducted, withheld, recouped, or offset wages from Plaintiff.

49. When Plaintiff took sick time or time off, Defendants paid her and then required her to "owe" the amount back by working subsequent weeks without pay or with reduced pay.

50. Plaintiff took sick leave in multiple years, including 2021, 2022, 2024, and 2025, and Defendants failed to provide paid sick leave required by law and retaliated against or penalized her for using leave.

51. Plaintiff complained to Defendants, including during the final approximately four months of employment, that her pay was being cut and that she was working more hours than Defendants paid.

52. Plaintiff's complaints were protected activity under the FLSA and NYLL.

53. Defendants responded by continuing to cut Plaintiff's hours and pay, manipulating time records, accusing her of wrongdoing, and terminating or effectively ending her employment.

54. Plaintiff's last day worked was March 20, 2026.

55. Defendants' violations were willful and not in good faith.

56. Defendants knew Plaintiff's actual hours because they scheduled her, observed her, and personally supervised her work.

57. In or about early March 2026, Plaintiff informed Defendant Dimitry Bederoff/Bederov that she was pregnant.

58. After Plaintiff disclosed her pregnancy, Bederoff/Bederov questioned how Plaintiff planned to continue working, asked whether her pregnancy would affect her work, and stated in substance that Plaintiff would not be able to work properly.

59. Bederoff/Bederov also demanded that Plaintiff "show me your belly" and stated that he did not believe Plaintiff was pregnant.

60. Plaintiff told Bederoff/Bederov that she had already worked approximately twenty weeks while pregnant and that her pregnancy had not interfered with her ability to perform her job duties.

61. On or about March 20, 2026, Plaintiff was approximately twenty-one weeks pregnant.

62. Defendants knew of Plaintiff's pregnancy when they terminated, forced out, reduced the hours or pay of, accused, threatened, and/or otherwise retaliated against Plaintiff.

63. On or about March 20, 2026, Bederov/Bederoff instructed Plaintiff to report to work at approximately 1:00 p.m. instead of her regular start time.

64. After Plaintiff arrived, Bederoff/Bederov accused Plaintiff of stealing approximately $130,000.

65. Plaintiff denied stealing any money.

66. Bederoff/Bederov showed Plaintiff surveillance videos, but none showed Plaintiff stealing, concealing, or taking money.

67. Bederoff/Bederov threatened that unless Plaintiff paid him $50,000 within forty-eight hours, he would go to the police, make the accusation public, make the accusation "viral," post about Plaintiff on social media and other channels, contact Plaintiff's school, contact Plaintiff's boyfriend and others, and destroy Plaintiff's ability to work in New York or the United States.

68. Bederoff/Bederov further threatened Plaintiff's immigration, citizenship, and family security by stating in substance that Plaintiff would not obtain United States citizenship, that her family members would not obtain papers or would be reported, and that he would report Plaintiff to the Ukrainian embassy so that she would lose Ukrainian citizenship.

69. Plaintiff reasonably understood these threats as threats to her livelihood, education, reputation, immigration status, family, and safety.

70. Bederoff/Bederov then demanded that Plaintiff pay $50,000 immediately and repay an additional alleged $80,000 over time.

71. Under coercion, duress, fear, and intimidation, Plaintiff delivered $50,000 to Bederoff/Bederov.

72. Bederoff/Bederov accepted and retained the $50,000 despite no legitimate basis to receive it.

73. No lawful, voluntary, knowing, or enforceable agreement authorized Bederoff/Bederov or any Defendant to receive or keep the $50,000.

74. Defendants' theft accusations were false.

75. Upon information and belief, Defendants published or caused the publication of false accusations that Plaintiff stole money, including to employees, coworkers, agents, customers, Plaintiff's school, Plaintiff's personal contacts, social media users, and/or others.

76. At minimum, Bederoff/Bederov made the false theft accusations in the presence of another employee/cashier.

77. Upon information and belief, Defendants also repeated or caused the repetition of false accusations that Plaintiff stole.

78. Defendants' false theft accusations injured Plaintiff in her profession, reputation, employability, education, and emotional well-being.

79. Defendants' stated theft accusations were pretextual and were used to conceal or retaliate for Plaintiff's wage complaints, pregnancy, perceived pregnancy-related limitations, and/or protected activity.

80. Defendants' conduct was malicious, willful, wanton, and in reckless disregard of Plaintiff's rights.

81. Defendants possess surveillance video, audio recordings, payroll records, time records, register records, cash records, employee files, text messages, emails, social media communications, and other documents concerning Plaintiff's wages, hours, pregnancy, termination, alleged theft accusations, and the $50,000 payment. Plaintiff demands preservation of all such evidence.

82. Defendants' failure to provide accurate wage notices and wage statements caused concrete harm because Plaintiff and Class Members could not determine from Defendants' records whether they were paid for all hours worked, whether overtime was properly calculated, which entity employed them, what deductions were taken, or whether their wages were timely and lawfully paid..

**6. <u>FLSA COLLECTIVE ALLEGATIONS</u>**

83. Plaintiff brings her FLSA claims on behalf of herself and all similarly situated current and former non-exempt employees who worked for Defendants at any time during the three years preceding filing through final judgment and who were not paid all minimum wages and/or overtime wages owed.

84. The FLSA Collective includes front-desk workers, cashiers, salon workers, retail workers, administrative employees, customer-service employees, marketing employees, and other non-exempt employees.

85. Plaintiff and FLSA Collective Members were similarly situated because Defendants subjected them to common pay policies and practices, including paying only recorded hours, recording fewer hours than worked, paying cash/off-the-books wages, failing to pay overtime, failing to pay all straight time, and maintaining inaccurate wage records.

86. Court-authorized notice should issue to FLSA Collective Members.

## 7. RULE 23 CLASS ALLEGATIONS

87. Plaintiff brings her NYLL wage, wage notice, wage statement, spread-of-hours, unlawful deduction, retaliation, and paid sick/protected time claims under Federal Rule of Civil Procedure 23 on behalf of all current and former non-exempt employees who worked for Defendants in New York during the applicable limitations period and who were not paid all wages owed, were denied required wage notices/statements, were subjected to unlawful deductions or withholdings, or were denied paid sick/protected time.

88. The Class is so numerous that joinder is impracticable.

89. Common questions predominate, including whether Defendants maintained common pay, timekeeping, wage statement, wage notice, overtime, spread-of-hours, deduction, and retaliation policies.

90. Plaintiff's claims are typical because they arise from the same practices that injured Class Members.

91. Plaintiff will fairly and adequately protect the interests of the Class.

92. A class action is superior to individual litigation because individual wage claims are relatively small compared to the cost of litigation and because common proof will resolve the core issues.

## 8. CAUSES OF ACTION

### 8.1. FLSA Minimum Wage and Overtime - 29 U.S.C. §§ 206, 207, 216(b)

93. Plaintiff repeats and realleges all prior paragraphs.

94. Plaintiff and FLSA Collective Members were non-exempt employees under the FLSA.

95. Defendants failed to pay Plaintiff and FLSA Collective Members at least the federal minimum wage for all hours worked.

96. Defendants failed to pay Plaintiff and FLSA Collective Members overtime compensation at one-and-one-half times their regular rates for all hours worked over forty per week.

97. Defendants' violations were willful.

98. Plaintiff and FLSA Collective Members are entitled to unpaid wages, overtime wages, liquidated damages, attorneys' fees, costs, and all other relief allowed by law.

**8.2. <u>FLSA Retaliation - 29 U.S.C. § 215(a)(3)</u>**

99. Plaintiff repeats and realleges all prior paragraphs.

100. Plaintiff complained that Defendants failed to pay her for all hours worked and improperly cut her pay.

101. Plaintiff's complaints constituted protected activity.

102. Defendants retaliated against Plaintiff by cutting and manipulating her pay and hours, accusing her of misconduct, terminating or effectively ending her employment, and otherwise taking adverse actions.

103. Plaintiff is entitled to damages, liquidated damages, equitable relief, attorneys' fees, costs, and all other relief allowed by law.

**8.3. <u>NYLL Minimum Wage, Overtime, and Unpaid Wages</u>**

104. Plaintiff repeats and realleges all prior paragraphs.

105. Plaintiff and Class Members were employees under the NYLL.

106. Defendants failed to pay Plaintiff and Class Members all minimum wages owed.

107. Defendants failed to pay Plaintiff and Class Members overtime compensation at one-and-one-half times their regular rates for hours worked over forty per week.

108. Defendants failed to pay all straight-time wages owed for hours worked at or below forty per week.

109. Defendants' violations were willful.

110. Plaintiff and Class Members are entitled to unpaid wages, overtime wages, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other relief allowed by law.

**8.4. NYLL Spread-of-Hours Pay**

111. Plaintiff repeats and realleges all prior paragraphs.

112. Plaintiff and Class Members worked shifts and/or workdays with a spread of hours exceeding ten hours.

113. Defendants failed to pay one additional hour of pay at the applicable minimum wage rate for each day when the spread of hours exceeded ten hours.

114. Plaintiff and Class Members are entitled to spread-of-hours damages, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other relief allowed by law.

**8.5. NYLL Unlawful Deductions, Withholdings, and Kickbacks - NYLL §§ 193, 198-b**

115. Plaintiff repeats and realleges all prior paragraphs.

116. Defendants made unlawful deductions from wages, withheld earned wages, altered time records to reduce wages, and required Plaintiff and Class Members to bear costs, repayments, offsets, or kickbacks that primarily benefited Defendants.

117. Defendants' practices included deleting worked time, failing to pay full days worked, and requiring Plaintiff to repay or work off paid sick/time-off wages.

118. Plaintiff and Class Members are entitled to recover unlawfully deducted and withheld wages, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other relief allowed by law.

**8.6. NYLL Wage Notice Violations - NYLL §§ 195(1), 198(1-b)**

119. Plaintiff repeats and realleges all prior paragraphs.

120. Defendants failed to provide Plaintiff and Class Members accurate wage notices containing all information required by NYLL § 195(1).

121. Plaintiff and Class Members are entitled to statutory damages, attorneys' fees, costs, and all other relief allowed by law.

**8.7. <u>NYLL Wage Statement Violations - NYLL §§ 195(3), 198(1-d)</u>**

122. Plaintiff repeats and realleges all prior paragraphs.

123. Defendants failed to provide Plaintiff and Class Members accurate wage statements showing all required information, including true hours worked, rates, overtime rates, gross wages, deductions, allowances, and employer identity.

124. Plaintiff and Class Members are entitled to statutory damages, attorneys' fees, costs, and all other relief allowed by law.

**8.8. <u>NYLL Retaliation - NYLL § 215</u>**

125. Plaintiff repeats and realleges all prior paragraphs.

126. Plaintiff complained about unpaid wages, pay cuts, inaccurate hours, and Defendants' wage practices.

127. Defendants retaliated against Plaintiff because of those complaints.

128. At or before commencement of this action, Plaintiff will serve notice of her NYLL § 215 claim upon the New York State Attorney General as required by NYLL § 215.

129. Plaintiff is entitled to lost wages, liquidated damages, civil penalties, emotional distress damages where available, injunctive relief, attorneys' fees, costs, and all other relief allowed by law.

**8.9. <u>New York Paid Sick Leave / NYC Protected Time Off Violations</u>**

130. Plaintiff repeats and realleges all prior paragraphs.

131. Plaintiff and Class Members accrued and were entitled to paid sick leave and protected time off.

132. Defendants failed to provide paid sick leave, penalized Plaintiff and Class Members for using sick leave, required repayment or future unpaid labor after leave, and retaliated against Plaintiff and Class Members for using or attempting to use protected leave.

133. Plaintiff and Class Members are entitled to unpaid leave compensation, compensatory damages, penalties, equitable relief, attorneys' fees, costs, and all other relief allowed by law.

**8.10. NYSHRL Pregnancy, Sex, and Pregnancy-Related Condition Discrimination**

134. Plaintiff repeats and realleges all prior paragraphs.

135. Plaintiff was pregnant and/or had a pregnancy-related condition within the meaning of the NYSHRL.

136. Defendants knew Plaintiff was pregnant.

137. Defendants discriminated against Plaintiff because of her pregnancy, sex, familial status, pregnancy-related condition, and/or perceived pregnancy-related limitations by questioning her ability to work, subjecting her to pregnancy-based comments, reducing her hours and pay, falsely accusing her of misconduct, terminating or forcing her separation, and otherwise altering the terms, conditions, and privileges of her employment.

138. Defendants' stated reasons for their actions were false, pretextual, and designed to conceal unlawful discrimination and retaliation.

139. Plaintiff is entitled to compensatory damages, emotional distress damages, punitive damages where available, attorneys' fees, costs, interest, and all other relief allowed by law.

**8.11. NYSHRL Pregnancy Retaliation**

140. Plaintiff repeats and realleges all prior paragraphs.

141. Plaintiff engaged in protected activity by disclosing her pregnancy, opposing pregnancy-based stereotyping, and asserting that her pregnancy did not affect her ability to work.

142. Defendants retaliated against Plaintiff by reducing her hours and pay, accusing her of theft, threatening her, coercing money from her, terminating or forcing her separation, and otherwise subjecting her to adverse actions.

143. Defendants' retaliation violated the NYSHRL.

**8.12. NYSHRL Citizenship/Immigration Status and National Origin Discrimination/Retaliation**

144. Plaintiff repeats and realleges all prior paragraphs.

145. Plaintiff is protected under the NYSHRL from discrimination and retaliation based on actual or perceived citizenship status, immigration status, and national origin.

146. Defendants threatened Plaintiff's citizenship, immigration status, family immigration security, Ukrainian citizenship, education, employment prospects, and ability to remain and work in the United States.

147. Defendants used Plaintiff's actual or perceived citizenship, immigration status, and national origin as tools of coercion, intimidation, retaliation, and discrimination.

148. Defendants' conduct violated the NYSHRL.

**8.13. NYSHRL Aiding and Abetting**

149. Plaintiff repeats and realleges all prior paragraphs.

150. Defendant Dimitry Bederov/Bederoff personally participated in, aided, abetted, incited, compelled, and/or coerced the discriminatory and retaliatory conduct alleged herein.

151. Bederov/Bederoff is individually liable under the NYSHRL.

**8.14. NYCHRL Pregnancy, Sex, Gender Discrimination, and Hostile Work Environment**

152. Plaintiff repeats and realleges all prior paragraphs.

153. Defendants treated Plaintiff less well because of her pregnancy, sex, gender, pregnancy-related condition, and/or perceived pregnancy-related limitations.

154. Defendants subjected Plaintiff to discriminatory comments, disbelief of her pregnancy, demands that she show her belly, pregnancy-based stereotyping, reduced pay and hours, false accusations, threats, coercion, and termination or forced separation.

155. Defendants' conduct created a hostile and discriminatory work environment under the NYCHRL.

156. Defendants are liable under the NYCHRL.

**8.15. <u>NYCHRL Retaliation</u>**

157. Plaintiff repeats and realleges all prior paragraphs.

158. Plaintiff engaged in protected activity by disclosing pregnancy, opposing pregnancy-based stereotyping, complaining about unlawful pay practices, and asserting her right to work free from discrimination and retaliation.

159. Defendants retaliated against Plaintiff by cutting pay and hours, manipulating records, accusing her of theft, threatening her reputation and immigration status, coercing $50,000 from her, and terminating or forcing her separation.

160. Defendants' conduct would reasonably deter a person from opposing discrimination or wage violations.

**8.16. <u>NYCHRL Citizenship/Immigration Status and National Origin Discrimination/Harassment/Retaliation</u>**

161. Plaintiff repeats and realleges all prior paragraphs.

162. Defendants discriminated against, harassed, threatened, intimidated, and retaliated against Plaintiff because of her actual or perceived citizenship status, immigration status, and national origin.

163. Defendants threatened to report Plaintiff and her family members, interfere with Plaintiff's ability to obtain United States citizenship, interfere with her family's ability to obtain lawful status, and report Plaintiff to the Ukrainian embassy.

164. Defendants used those threats to coerce Plaintiff into paying $50,000 and to intimidate her from asserting her rights.

165. Defendants' conduct violated the NYCHRL.

**8.17. <u>NYLL § 203-e Reproductive Health Decision-Making Discrimination/Retaliation</u>**

166. Plaintiff repeats and realleges all prior paragraphs.

167. Plaintiff's pregnancy-related medical care, prenatal care, and reproductive health decision-making were protected under NYLL § 203-e.

168. Defendants discriminated and retaliated against Plaintiff with respect to compensation, terms, conditions, and privileges of employment because of, or on the basis of, Plaintiff's reproductive health decision-making, pregnancy, and related medical circumstances.

169. Defendants' conduct violated NYLL § 203-e.

**8.18. <u>NYLL § 740 Whistleblower Retaliation</u>**

170. Plaintiff repeats and realleges all prior paragraphs.

171. Plaintiff objected to and/or complained about Defendants' unlawful wage practices, including unpaid wages, altered time records, unlawful deductions, and failure to pay for all hours worked.

172. Plaintiff also objected to false theft accusations, coercive repayment demands, and threats to misuse law enforcement, immigration, citizenship, social media, school, and reputational channels against her.

173. Plaintiff reasonably believed Defendants' conduct violated laws, rules, and regulations, including wage laws, anti-retaliation laws, anti-discrimination laws, and laws prohibiting coercion, threats, and unlawful wage deductions.

174. Plaintiff complained to and objected directly to Bederov/Bederoff, who was a supervisor, owner, manager, and/or agent of Defendants and who was already aware of and personally participated in the unlawful practices alleged herein.

175. Defendants retaliated against Plaintiff by reducing pay and hours, terminating or forcing her separation, accusing her of theft, threatening to contact immigration/citizenship-related authorities, threatening her family, and coercing $50,000 from her.

176. Defendants' conduct violated NYLL § 740.

**8.19. <u>Conversion</u>**

177. Plaintiff repeats and realleges all prior paragraphs.

178. Plaintiff had a possessory right to the $50,000 obtained from her mother and delivered to Bederov/Bederoff under duress.

179. Defendants wrongfully exercised dominion and control over the $50,000.

180. Defendants had no lawful right to possess, retain, or use the $50,000.

181. Plaintiff demanded, or demand would have been futile under the circumstances, that Defendants return the $50,000.

182. Defendants are liable for conversion.

**8.20. <u>Money Had and Received / Unjust Enrichment</u>**

183. Plaintiff repeats and realleges all prior paragraphs.

184. Defendants received $50,000 from Plaintiff.

185. Defendants benefitted from receiving and retaining the $50,000.

186. Defendants' retention of the $50,000 is inequitable because the money was obtained through false accusations, threats, coercion, duress, and intimidation.

187. Equity and good conscience require Defendants to return the $50,000, with interest.

### 8.21. Declaratory Judgment and Restitution Based on Duress and Coercion

188. Plaintiff repeats and realleges all prior paragraphs.

189. Defendants threatened Plaintiff with reputational, immigration, citizenship, educational, employment, familial, and legal harm unless she paid $50,000.

190. Defendants' threats deprived Plaintiff of free will and left Plaintiff with no reasonable practical alternative under the circumstances.

191. Plaintiff paid $50,000 under duress and coercion.

192. Any purported agreement requiring Plaintiff to pay Defendants $50,000 or any additional amount is void, voidable, unenforceable, and of no legal effect.

193. Plaintiff is entitled to a declaration that any such agreement is void or voidable and to restitution of all amounts paid under duress, plus interest and all other relief allowed by law.

## 9. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Olha Velykholova, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally, and grant the following relief:

A. Certifying this action as a collective action under 29 U.S.C. § 216(b) on behalf of all similarly situated current and former non-exempt employees who worked for Defendants during the applicable FLSA limitations period;

B. Authorizing notice to the FLSA Collective and directing Defendants to produce contact, employment, payroll, and timekeeping information for putative FLSA Collective Members in a usable electronic format;

C. Certifying the Rule 23 Class and any appropriate subclasses under Federal Rule of Civil Procedure 23 for Plaintiff's NYLL wage, wage notice, wage statement, spread-of-hours, unlawful deduction, retaliation, paid sick leave, protected time, and related class claims;

D. Appointing Plaintiff as representative of the FLSA Collective and Rule 23 Class;

E. Appointing Plaintiff's counsel as counsel for the FLSA Collective and Rule 23 Class;

F. Declaring that Defendants' wage, hour, payroll, timekeeping, deduction, leave, retaliation, discrimination, harassment, and coercive repayment practices violated the FLSA, NYLL, NYSHRL, NYCHRL, New York City Earned Safe and Sick Time Act/Protected Time Off Law, and other applicable laws;

G. Awarding Plaintiff and the FLSA Collective unpaid minimum wages, unpaid overtime wages, unpaid straight-time wages, liquidated damages, attorneys' fees, costs, and all other relief available under the FLSA;

H. Awarding Plaintiff and the Rule 23 Class unpaid minimum wages, unpaid overtime wages, unpaid straight-time wages, spread-of-hours pay, unlawfully deducted wages, unlawfully withheld wages, liquidated damages, statutory damages, prejudgment interest, attorneys' fees, costs, and all other relief available under the NYLL and applicable regulations;

I. Awarding statutory damages for Defendants' failure to provide accurate wage notices under NYLL § 195(1);

J. Awarding statutory damages for Defendants' failure to provide accurate wage statements under NYLL § 195(3);

K. Awarding Plaintiff and the applicable class or subclass damages, statutory remedies, penalties, equitable relief, attorneys' fees, and costs for Defendants' failure to provide, compensate, permit, or lawfully administer sick leave, safe leave, and protected time;

L. Awarding Plaintiff all relief available for retaliation under the FLSA and NYLL § 215, including lost compensation, liquidated damages, civil penalties, equitable relief, attorneys' fees, costs, and all other relief permitted by law;

M. Awarding Plaintiff all relief available under NYLL § 740, including injunctive relief, reinstatement or front pay in lieu thereof, lost wages, lost benefits, other remuneration, reasonable attorneys' fees, costs, civil penalties, punitive damages where available, and all other relief permitted by law;

N. Awarding Plaintiff all relief available under NYLL § 203-e for discrimination and retaliation based on reproductive health decision-making, including compensatory damages, liquidated damages, equitable relief, attorneys' fees, costs, and all other relief permitted by law;

O. Awarding Plaintiff back pay, front pay, lost benefits, compensatory damages, emotional distress damages, punitive damages where available, equitable relief, attorneys' fees, costs, interest, and all other relief available under the NYSHRL and NYCHRL for pregnancy discrimination, sex discrimination, gender discrimination, pregnancy-related-condition discrimination, hostile work environment, retaliation, and aiding and abetting;

P. Awarding Plaintiff back pay, front pay, lost benefits, compensatory damages, emotional distress damages, punitive damages where available, equitable relief, attorneys' fees, costs, interest, and all other relief available under the NYSHRL and NYCHRL for discrimination, harassment, intimidation, and retaliation based on actual or perceived citizenship status, immigration status, alienage, and national origin;

Q. Awarding Plaintiff damages for defamation and slander per se, including presumed damages, reputational damages, economic damages, emotional distress damages, special damages where proven, punitive damages where available, interest, costs, and all other relief permitted by law;

R. Awarding Plaintiff restitution, disgorgement, and damages for conversion, money had and received, unjust enrichment, duress, coercion, and related claims arising from the $50,000 Defendants wrongfully obtained from Plaintiff;

S. Declaring that any alleged repayment agreement, confession, admission, acknowledgment of debt, settlement, release, or other obligation obtained from Plaintiff on or about March 20, 2026 was procured through duress, coercion, threats, intimidation, retaliation, and/or unlawful conduct, and is void, voidable, unenforceable, and of no legal effect;

T. Ordering Defendants to return the $50,000 obtained from Plaintiff, with prejudgment interest;

U. Awarding prejudgment interest and post-judgment interest to the fullest extent permitted by law;

V. Awarding reasonable attorneys' fees, expert fees, litigation expenses, and costs to the fullest extent permitted by law;

W. Ordering Defendants to preserve all payroll records, time records, punch records, schedules, wage notices, wage statements, personnel files, employee handbooks, leave records, surveillance video, audio recordings, text messages, emails, social media communications, cash ledgers, bank records, payment records, investigative materials, communications concerning Plaintiff, communications concerning alleged theft, communications concerning Plaintiff's pregnancy, and communications concerning Plaintiff's wages, hours, discipline, termination, and the $50,000 payment;

X. Entering appropriate declaratory and injunctive relief prohibiting Defendants from continuing the unlawful practices alleged herein and from retaliating against Plaintiff, witnesses, opt-in plaintiffs, class members, or any person who participates in this action; and

Y. Granting such other and further relief as the Court deems just, proper, and equitable.

## 10. <u>JURY TRIAL DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demand a trial by jury in this action.

Dated: Queens, New York
April 27, 2026

SACCO & FILLAS LLP

By: *_______/s/ Clifford Tucker____________________*

Clifford Tucker, Esq.
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102
Tel: 718-269-2243
Fax: 718-559-6517
CTucker@SaccoFillas.com
*Attorneys for AYAH ELFAYOUMI*

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER**

**LIABILITY FOR SERVICES RENDERED**

TO: BBS BEAUTY GLOBAL INC.; ROBERT DANIELS SALON, INC.; BBS ENTERPRISES, INC. d/b/a BRIGHTON BEAUTY SUPPLY; BBS BEAUTY INDUSTRIES, INC.; BBS BEAUTY SYSTEMS, INC.; CASA DI CAPELLI SALON INC.; BRIGHTON BEAUTY SUPPLY; DIMITRY BEDEROFF a/k/a DIMITRY BEDEROV a/k/a DIMITRY BEDEROFT; JOHN DOE CORPORATIONS 1-10; and JOHN/JANE DOES 1-10

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Plaintiff and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of BBS BEAUTY GLOBAL INC.; ROBERT DANIELS SALON, INC.; BBS ENTERPRISES, INC. d/b/a BRIGHTON BEAUTY SUPPLY; BBS BEAUTY INDUSTRIES, INC.; BBS BEAUTY SYSTEMS, INC.; CASA DI CAPELLI SALON INC.; BRIGHTON BEAUTY SUPPLY; DIMITRY BEDEROFF a/k/a DIMITRY BEDEROV a/k/a DIMITRY BEDEROFT; JOHN DOE CORPORATIONS 1-10; and JOHN/JANE DOES 1-10 for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: Queens, New York
April 27, 2026

SACCO & FILLAS LLP

By: *__/s/ Clifford Tucker__*
Clifford Tucker, Esq.
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102
Tel: 718-269-2243
Fax: 718-559-6517
CTucker@SaccoFillas.com
*Attorneys for AYAH ELFAYOUMI*

**DEMAND BY EMPLOYEE TO INSPECT SHARE RECORDS AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW**

TO: ALL MJM FITCH INC

PLEASE TAKE NOTICE, that AYAH ELFAYOUMI and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf,

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts therefrom on or after five (5) days from receipt of this notice.

Dated: Queens, New York
April 27, 2026

SACCO & FILLAS LLP

By: *__/s/ Clifford Tucker__*

Clifford Tucker, Esq.
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102
Tel: 718-269-2243
Fax: 718-559-6517
CTucker@SaccoFillas.com
*Attorneys for AYAH ELFAYOUMI*

**CONSENT TO JOIN ACTION**

**REQUEST TO BECOME A PARTY-PLAINTIFF**

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under each and every federal and state wage and hour law, rule and regulation which may include but is not limited to the federal Fair Labor Standards Act, New York Labor Law, New Jersey Wage and Hour Law, and any other applicable law, rule, regulation, and wage order. If I am not a named Plaintiff(s), I authorized the named Plaintiffs to make all decisions involving this litigation and settle this action on behalf. I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Name: Olya Vell [print full name]

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature: Olya Vell (Apr 3, 2026 17:24:10 EDT)        Date: 03/04/2026